**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RIVERSOURCE LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 12 C 1388 |
| v. | ) ) | Judge Ronald A. Guzmán |
| AMY PLUMBING, HEATING & COOLING, INC., | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff sues defendant for statutory or common law rescission of a life insurance policy it issued to defendant's deceased principal, James Krenz, or for a declaration that plaintiff is not required to pay benefits under the policy. The case is before the Court on plaintiff's motions to strike the declaration of Patricia Krenz and for summary judgment. For the reasons set forth below, the Court denies the motion to strike and grants in part and strikes as moot in part the motion for summary judgment.

**Motion to Strike**

Plaintiff moves to strike the declaration of Patricia Krenz because it is "self-serving" and was not produced during the discovery period. (Pl.'s Mot. Strike ¶¶ 4-5.) However, the Seventh Circuit "ha[s] routinely found that a nonmoving party's [self-serving] affidavit can constitute affirmative evidence to defeat a summary judgment motion," as long as the affiant is competent testify to the information set forth in it. *Payne v. Pauley*, 337 F.3d 767, 771-72 (7th Cir. 2003); *see Paz v. Wauconda Healthcare & Rehab. Cent., LLC*, 464 F.3d 659, 664-65 (7th Cir. 2006) ("We have long

held that a plaintiff may defeat summary judgment with his or her own deposition.").[1] Plaintiff does not contend that Mrs. Krenz lacks personal knowledge of the statements made in her declaration or that the statements are otherwise inadmissible. Thus, their "self-serving" nature is not a basis for striking the declaration.

Nor is the fact that the declaration was not produced during discovery. The Federal Rules of Civil Procedure require defendant: (1) at the start of the case, to identify the people likely to have discoverable information about the case and to give plaintiff any relevant documents in defendant's "possession, custody, or control"; and (2) during the discovery period, to respond to written discovery requests propounded by plaintiff. *See* Fed. R. Civ. P. 26(a), 33-36. Given that plaintiff took a statement from Mrs. Krenz eight months *before* it filed this suit (*see* Ballinger Decl., Ex. 5, Patricia Krenz Stmt. (June 24, 2011)), plaintiff cannot claim that it did not realize she had knowledge of the case until her declaration was filed. It also cannot complain about defendant's failure to produce the declaration during the discovery period because it did not exist, and defendants were not required to create it, at that time. *See Harris v. Advance Am. Cash Advance Ctrs., Inc.*, No. 1:11-cv-179, 2012 WL 6085266, at *3-5 (S.D. Ohio Dec. 6, 2012) (stating that the discovery rules require parties to produce documents that already exist not to create new documents); Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice & Procedure § 2210 ("A document or thing is not in the possession, custody, or control of a party if it does not exist. Production cannot be required of a document no longer in existence nor of one yet to be prepared.") (footnotes omitted). In short, given that plaintiff knew Mrs. Krenz was a likely witness and could have asked her about her knowledge of the case during discovery, there

---

[1]Oddly, plaintiff cites *Paz* as support for its motion to strike. (*See* Mot. Strike ¶ 5.)

is nothing improper about defendant's submission of her declaration in opposition to plaintiff's summary judgment motion.

**Summary Judgment**

**Facts**

On November 27, 2009, James Krenz, who was defendant's owner, submitted a life insurance application to plaintiff. (*See* Nowitzki Decl., Ex. 1, Ins. Application at APFI 0047.) Among other things, Krenz said in the application that he: (1) had last seen his physician on November 2, 2009; (2) was taking medication for hypertension, high cholesterol and Type 2 diabetes; (3) was being treated by a chiropractor for "sciatic discomfort"; and (4) had gastric bypass surgery in 2004 and a kidney ailment "in the mid to late 1980's [sic]." (*Id.* at 0041-44.)

Thereafter, plaintiff ordered Krenz's medical records from his doctor, and on December 19, and 30, 2009, respectively, conducted a medical exam and follow-up interview of Krenz. (Def.'s LR 56.1(b)(3)(B) Stmt. ¶ 2.)

On February 3, 2010, Krenz sought medical treatment for "loss of appetite, loss of energy, fever, gastrointestinal symptoms" and abdominal pain. (Def.'s LR 56.1(b)(3)(B) Stmt., Ex. F, 2/3/10 Medical Record at APFI 0453.) He reported that he had had abdominal pain "on and off for ~ 2 months" and had lost ten pounds over the last few weeks. (*Id.*) The treatment provider ordered a CT scan of Krenz's abdomen. (*Id.* at APFI 0454.)

On February 4, 2010, the CT scan was performed, and it revealed the following:

> In the tail [of ] the pancreas there is a focal enlargement measuring 3.1 x 3.5 cm .
> . . . I believe this is most likely due to a focal pancreatitis however given the clinical history a pancreatic mass with associated inflammation is in the differential diagnosis. A small pancreatic abscess is a possibility as well.

3

> In this case I would recommend a repeat scan with IV contrast after metformin [Krenz's diabetes medication] has been halted for 24 hours and providing IV hydration to further clarify this.

(*See* Ballinger Decl., Ex. 7, 2/4/10 Medical Record at APFI 0228.)

Later on February 4, 2010, Krenz's treatment provider instructed his staff to "[c]all pt and inform him that he has acute pancreatitis – inflammation of the pancreas," to schedule a second CT scan of his abdomen and tell Krenz that the treatment provider "[w]ill call him back with CT results." (*Id.*, Ex. 8, 2/4/10 Medical Record at APFI 0238.) Subsequently, Nicole L. noted in Krenz's record: "Pt informed as directed." (*Id.*) The same day, Patricia Krenz called the doctor's office to ask whether Krenz should continue taking certain medication given "his recent dx of pancreatitis." (*See id.*, Ex. 9, 2/4/10 Chart Note at APFI 0432.)

On February 8, 2010, the second CT scan was performed, and the findings were:

> 10 mm low-density in the lateral right dome of the liver. 8 mm low-density in the central superior aspect of the right lobe of the liver. The structure too small to characterize would recommend follow CT scan.
>
> The tail of the pancreas is enlarged and there is approximately 3.3 cm low-density which exhibits enhancement to a mild degree. . . . Finding is not consistent with a simple abscess of the of the pancreas. While focal pancreatitis is a possibility this is thought less likely and suspicion is higher of pancreatic neoplasm.

(*See id.*, Ex. 10, 2/8/10 Medical Record at APFI 0234.)

On February 9, 2010, plaintiff told Krenz that it would issue him a $250,000.00 ten-year term life insurance policy with a "D" rating, if he signed an amendment to the insurance application. (Def.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 3-4.) The amendment, which Krenz signed the same day, states:

> I hereby amend my application to insurance dated 11/27/2009 in the following particulars, agreeing that this amendment is to be made part of my application and considered as a basis of the insurance policy. . . .
>
> . . . .

> I hereby declare that there has been no change in my health since the date of my application, supplemental application (including applications for riders) or medical examination, whichever was later. I understand that this declaration is relied upon by Riversource Life Insurance Company as a basis for issuing coverage.

(*See* Nowitzki Decl., Ex. 2, 2/9/10 Amendment to Ins. Application at APFI 0049-51.)

On February 11, 2010, a biopsy was taken of Krenz's pancreas. (*See* Ballinger Decl., Ex. 14, 2/11/10 Medical Record at APFI 0392.) The report issued the next day stated that the samples taken "were consistent with adenocarcinoma." (*See id.*, Ex. 15, 2/12/10 Medical Record at APFI 0274.)

On February 25, 2010, Loyola University Medical Center confirmed that Krenz had pancreatic cancer. (*See id.*, Ex. 17, 2/25/10 Medical Record at APFI 0280.)

On May 31, 2011, Krenz died of complications from metastatic pancreatic carcinoma. (Def.'s LR 56.1(b)(3)(B) Stmt. ¶ 7.)

On September 6, 2011, defendant submitted a claim for benefits under the policy. (*Id.* ¶ 8.)

## **Discussion**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

In relevant part, the Illinois Insurance Code provides:

> No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company. . . .

215 Ill. Comp. Stat. 5/154. This section has been interpreted as permitting rescission of an insurance policy only if the insured made a misrepresentation in the application that "materially affect[ed] the acceptance of the risk . . . assumed by the insurer" or "with an intent to deceive." *Golden Rule Ins. Co. v. Schwartz*, 786 N.E.2d 1010, 1015 (Ill. 2003).

Plaintiff contends that Krenz's statement in the February 9, 2010 amendment that there had been no change in his health was a misrepresentation that materially impacted the risk it had agreed to accept. Defendant argues that the contested phrase is ambiguous because it is not defined in the amendment and can be interpreted in several ways.

The terms of an insurance policy, like those of other contracts, are "read according to their plain and ordinary meaning." *Aurelius v. State Farm Fire & Cas. Co.*, 894 N.E.2d 765, 769 (Ill. App. Ct. 2008). If a policy provision "is subject to more than one reasonable interpretation," it is ambiguous. *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 655 N.E.2d 842, 846 (Ill. 1995). A term is not ambiguous, however, simply "because [it] is not defined within the policy or because the parties can suggest creative possibilities for its meaning." *Id.* If a provision is not ambiguous, the Court "must give [its] words their plain, ordinary and popular meaning." *Id.*

There is no ambiguity in the phrase "there has been no change in my health." The plain and ordinary meaning of the word "health" is "the general condition of the body." *See* http://www.merriam-webster.com/dictionary/health. Thus, when Krenz signed the amendment

6

containing that language, he attested that the general condition of his body had not changed since his insurance medical exam on December 30, 2009. It is undisputed, however, that during this period, Krenz: (1) sought medical care for abdominal pain, weight loss and gastrointestinal symptoms; (2) had two CT scans of his abdomen; and (3) was told he had acute pancreatitis. (*See* Ballinger Decl., Ex. 7, 2/4/10 Medical Record at APFI 0228; *id.*, Ex. 8, 2/4/10 Medical Record at APFI 0238; *id.*, Ex. 9, 2/4/10 Chart Note at APFI 0432.) Given these undisputed facts, Krenz's declaration that his health had not changed was a misrepresentation.

The record also establishes that the misrepresentation was material. A misrepresentation is material if "a reasonably careful and intelligent [person] would have regarded the facts stated as substantially increasing the chances of the events insured against, so as to cause a rejection of the application or different conditions." *Garde ex rel. Garde v. Country Life Ins. Co.*, 498 N.E.2d 302, 308 (Ill. App. Ct. 1986). "The materiality of a misrepresentation may be established by the underwriter's testimony or testimony of the insurer's employees." *Id.* As defendant admits, "had [plaintiff's underwriters] known about [Krenz's] weight loss, abdominal pain and tenderness, doctor's visits, CT scans and/or diagnoses of pancreatitis, [plaintiff] would not have issued the Policy." (Def.'s LR 56.1(b)(3)(B) Stmt. ¶ 15.) Thus, the record establishes that the misrepresentation was material.

## Conclusion

For the reasons set forth above, the record establishes that Krenz made a material misrepresentation in the insurance application, and thus plaintiff is entitled to judgment as a matter of law on its Count I claim for rescission. Accordingly, the Court grants plaintiff's motion for

7

summary judgment [42] as to Count I of the complaint and strikes it as moot as to the alternative claims asserted in Counts II and III.  Plaintiff's motion to strike the declaration of Patricia Krenz [56] is denied.  This case is terminated.

**SO ORDERED.**                                      **ENTER:  March 15, 2013**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**